UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| SHAWNEE HANNAH, et al., | No. 2:17-cv-01248-JAM-EFB |
|---|---|
| Plaintiffs, | |
| v. | **ORDER DENYING THE UNITED STATES' MOTION TO STRIKE EXPERT WITNESS DR. MICHAEL HURWITZ** |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

This matter is before the Court on Defendant United States' Motion to Strike. Mot., ECF No. 15. Plaintiffs Shawnee Hannah and Bonnie Hannah ("Plaintiffs") filed an opposition, Opp'n, ECF No. 16, to which the United States replied, Reply, ECF No. 17. On January 9, 2019, the Court held an evidentiary hearing regarding the admissibility of Dr. Michael Hurwitz's proffered testimony. Minute Order, ECF No. 24. After consideration of the parties' briefing on the motion and relevant legal authority, the Court DENIES the United States' Motion to Strike with respect to Dr. Hurwitz.[1]

///

---

[1] The Court will rule on the United States' motion regarding nurse life-care planner April Stallings's at a future date after additional briefing and a further hearing, if necessary.

1

## I. BACKGROUND

This medical malpractice action arises out of treatment Plaintiff Shawnee Hannah received at the Department of Veterans Affairs ("VA") Mather facility. Compl., ECF No. 1, pp. 6-10. Mr. Hannah sought treatment at Mather for right-sided neck pain and stiffness in May 2015. Id. at 6-7. Mr. Hannah underwent surgery to drain a neck abscess on May 21, 2015. Id. at 7. When Mr. Hannah woke up from anesthesia, he was quadriplegic. Id. at 8-9. Mather was unable to perform a cervical MRI on Mr. Hannah while he was intubated, so medical staff attempted to transfer him to a different facility after he stabilized. Id. at 8. The hospital asserts that no beds were available for Mr. Hannah's transfer until May 24, 2015, when he was transferred to UC Davis Medical Center. Id. at 9. Mr. Hannah remained quadriplegic. Id.

Plaintiffs submitted a September 2016 expert report from Dr. Michael Hurwitz, a general surgeon who reviewed Shawnee Hannah's medical records from the VA and UC Davis Medical Center. Hurwitz Report, ECF No. 15-2, pp. 10-18. In that report, Dr. Hurwitz states that the VA provided Mr. Hannah with "timely and appropriate surgical care." Id. at 3. Dr. Hurwitz goes on to describe the "diligent" consultations that Mr. Hannah received from internal medicine, ENT, infectious disease, neurology, pulmonology and cardiology, but notes those specialties are beyond his purview. Id. He opines that although he is "not trained in neurology and neurosurgery," "there appears to have been a very narrow window of time in which Mr. Hannah's neurologic function might have been salvageable[.]" Id.

Nevertheless, he states it is "beyond [his] expertise to speculate as to when this window closed." Id.  Finally, Dr. Hurwitz concludes that Shawnee Hannah required emergent transfer to a facility with MRI and neurosurgical capabilities "if there was to be any hope for preservation of neurologic function" and by its failure to provide such emergent access, VA fell below the standard of care.  Id.

## II.  LEGAL STANDARD

In a case arising under the Federal Tort Claims Act (FTCA), the Court applies the law of the state in which the alleged tort occurred.  Liebsack v. United States, 731 F.3d 850, 855 (9th Cir. 2013).  The burden of proof for a medical malpractice claim in California requires the plaintiff to offer competent expert testimony.  Flowers v. Torrance Mem'l Hosp. Med. Ctr., 884 P.2d 142, 147 (Cal. 1994).

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony in federal courts.  In conjunction with the preliminary inquiry required by Federal Rule of Evidence 104, the Court must assess the expert witness's qualifications, the relevance of his or her testimony, and that testimony's reliability.  Daubert v. Merrell Dow Pharm., Inc. ("Daubert I"), 509 U.S. 579, 594-95 (1993).  The Court has wide discretion when acting as a gatekeeper for the admissibility of expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 151-52 (1999).

The Court considers an expert's "scientific, technical, or other specialized knowledge" in assessing whether the expert's qualifications "will help the trier of fact to understand the

evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "If an individual is not qualified to render an opinion on a particular question or subject, it follows that his opinion cannot assist the trier of fact with regard to that particular question or subject." Morin v. United States, 534 F. Supp. 2d 1179, 1185 (D. Nev. 2005), aff'd, 244 F. App'x 142 (9th Cir. 2007). An expert's testimony is relevant if "it logically advances a material aspect of the proposing party's case." Daubert v. Merrell Dow Pharm., Inc. ("Daubert II"), 43 F.3d 1311, 1315 (9th Cir. 1995).

An expert's mere assurances of reliability are insufficient under Daubert. Daubert II, 43 F.3d at 1319. "Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." Id. at 1316.

### III. DISCUSSION

#### A. Dr. Hurwitz's Opinions Are Not Excluded

Plaintiff seeks to offer Dr. Hurwitz's testimony that physicians at Mather violated the standard of care regarding the timeliness of Mr. Hannah's transfer. The United States seeks to strike Dr. Hurwitz's testimony, arguing that Dr. Hurwitz rendered opinions on matters outside his established expertise. Mot. at 6-7.

##### a. Dr. Hurwitz Is Qualified to Provide Testimony

The Court first considers Dr. Hurwitz's "scientific, technical, or other specialized knowledge" to determine if he is

qualified to testify on the topics at issue. See Fed. R. Evid. 702(a).

At the hearing, Dr. Hurwitz testified that he has been a practicing physician for over 20 years. He currently serves as a general surgeon and chief of staff at a hospital in Newport Beach, California. Dr. Hurwitz relies on his education, training, years of practice, and review of medical literature to draw conclusions about the appropriate standard of care in a medical situation. He believes that a general surgeon should recognize that "an acute neurological change requires immediate intervention, assessment and intervention." In this case, he opines that the general surgeons at Mather fell below the standard of care by not providing emergent transfer to a facility where a MRI machine could accommodate an intubated patient.

The United States objects, inter alia, that Dr. Hurwitz's current position does not entail overseeing patient transfer and that he has not personally transferred a patient within the last year. Furthermore, the United States argues that Dr. Hurwitz is not knowledgeable about the transfer policies at different hospitals. The United States appears to contend that only a specialist in the field of patient transfer, with experience at VA medical facilities, may testify about the topic.

The Ninth Circuit has not imposed such stringent requirements for medical experts. See Doe v. Cutter Biological, Inc., a Div. of Miles Labs., Inc., 971 F.2d 375, 385 (9th Cir. 1992) (finding it was an abuse of discretion for a district court to grant a motion to strike medical experts for lack of personal knowledge). "Ordinarily, courts impose no requirement that an

expert be a specialist in a given field, although there may be a requirement that he or she be of a certain profession, such as a doctor." Id. Here, Dr. Hurwitz is an experienced general surgeon, testifying about the standard of care by other general surgeons as it pertains to the timeliness of transferring patients. Although he admittedly has not transferred a patient within the last year, Dr. Hurwitz testified that he has past experience transferring patients.

The Court finds Dr. Hurwitz to be sufficiently qualified to testify about the timeliness of transfer by general surgeons.

          b.    Dr. Hurwitz's Testimony Is Relevant

Next, the Court reviews whether Dr. Hurwitz's testimony "logically advances a material aspect" of Plaintiffs' case. Daubert II, 43 F.3d at 1315. The Court finds that Dr. Hurwitz's testimony is relevant because it relates to standard of care and causation, essential elements of Plaintiff's case.

          c.    Dr. Hurwitz's Testimony Is Reliable

Finally, the Court determines whether Dr. Hurwitz's testimony is soundly based on objective, independent methodology. Daubert II, 43 F.3d at 1316. Concerns about reliability are lessened where, as here, the Court sits as trier of fact. CFM Commc'ns, LLC v. Mitts Telecasting Co., 424 F. Supp. 2d 1229, 1233 (E.D. Cal. 2005). See also Volk v. United States, 57 F. Supp. 2d 888, 896 n.5 (N.D. Cal. 1999) ("[I]t bears noting that the Daubert gatekeeping obligation is less pressing in connection with a bench trial.").

As noted above, Dr. Hurwitz based his conclusions on his education, training, years of practice, and review of medical

literature.  Based on a thorough review of the record and Dr. Hurwitz's report, the Court finds that Dr. Hurwitz's conclusions and report are based on sufficient facts to satisfy the reliability prong. Indeed, as the Court repeatedly stated at the hearing on this motion, the United States' objections to Dr. Hurwitz's testimony go primarily to the weight to be given to this evidence rather than its admissibility.

                IV.   CONCLUSION AND ORDER

Accordingly, the Court hereby DENIES the United States' Motion to Strike with respect to Dr. Hurwitz's report and testimony.

IT IS SO ORDERED.

Dated: January 23, 2019

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE