UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWNEE HANNAH, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | No. 2:17-cv-01248-JAM-EFB<br><br>**ORDER GRANTING THE UNITED STATES' MOTION TO STRIKE THE TESTIMONY OF APRIL STALLINGS** |

This matter is before the Court to resolve Defendant United States' Motion to Strike ("the United States") Plaintiffs' expert witness April Stallings ("Stallings"). Mot., ECF No. 15. Plaintiffs Shawnee Hannah and Bonnie Hannah ("Plaintiffs") oppose the Motion. Opp'n, ECF No. 16. The Court held a brief hearing on the Motion with respect to Stallings on January 9, 2019, after which the parties submitted supplemental briefing as ordered by the Court. See Def.'s Supp. Brief, ECF No. 26; Supp. Opp'n, ECF No. 28, Supp. Reply, ECF No. 31. After consideration of the parties' briefing and relevant legal authority, the Court GRANTS the United States' Motion to Strike with respect to Stallings's testimony.[1]

---

[1] This motion was determined to be suitable for decision without the need for a further hearing or oral argument. EDCA L.R. 230(g)

1

I. BACKGROUND

This medical malpractice action arises out of treatment Plaintiff Shawnee Hannah received at the Department of Veterans Affairs ("VA") Mather facility. Compl., ECF No. 1, pp. 6-10. Mr. Hannah sought treatment at Mather for right-sided neck pain and stiffness in May 2015. Id. at 6-7. Mr. Hannah underwent surgery to drain a neck abscess on May 21, 2015. Id. at 7. When Mr. Hannah woke up from anesthesia, he was quadriplegic. Id. at 8-9. Mather was unable to perform a cervical MRI on Mr. Hannah while he was intubated, so medical staff attempted to transfer him to a different facility after he stabilized. Id. at 8. The hospital asserts that no beds were available for Mr. Hannah's transfer until May 24, 2015, when he was transferred to UC Davis Medical Center. Id. at 9. Mr. Hannah remained quadriplegic. Id.

The Pre-Trial Scheduling Order required parties to disclose Rule 26(a)(2)(B) experts on October 12, 2018, with supplemental or rebuttal expert disclosure by October 26, 2018. Pretrial Scheduling Order, ECF No. 10. Plaintiffs served the United States with Nurse April Stallings's expert report on October 12, 2018. See Pl.'s Initial Expert Witness Disclosures, ECF No. 15-2. The United States responded with its rebuttal experts on October 26, 2018. See Frueh Decl., ECF No. 26-1, p. 1. A month later, Plaintiffs submitted a statement from Stallings that she intended to submit an updated supplemental report prior to her December deposition. Stallings Letter, ECF No. 17-1, p. 9. Plaintiffs did not seek the Court's permission for this untimely discovery. On December 14, 2018, the date of her deposition,

Stallings provided the United States with an updated report dated December 13, 2018.  Frueh Decl. at 1.

The initial Stallings report, produced in October 2018, was authored in February 2016.  2016 Stallings Report, ECF No. 15-2.  Stallings offers her opinions based on a "reasonable degree of nursing probability" after reviewing medical records provided by Plaintiff's counsel.  Id. at 1.  The February 2016 report does not name the doctors upon whom Stallings relied in forming her opinions.  See id.  The report also does not offer a medical expert opinion in support of priced treatments, such as psychological care and the necessity and frequency of medication.  See id.

In the December 2018 supplement, Stallings relies on portions of the United States' rebuttal reports and adds new pricing sources and a new assessment of Mr. Hannah conducted on November 29, 2018.  2018 Stallings Report, ECF No. 26-4, p. 9.  Stallings admits that she has not spoken to any of Mr. Hannah's treating physicians since 2016.  Stallings Dep., ECF No. 26-6, p. 34.

## II. LEGAL STANDARD

### A. Expert Disclosure Requirements and Supplemental Reports

Federal Rule of Civil Procedure 26(a)(2) directs a party to disclose to other parties the identity of any witness it may use at trial to present evidence.  Fed. R. Civ. P. 26(a)(2)(A).  For an expert witness, this disclosure must be accompanied by a written report prepared and signed by the expert.  Fed. R. Civ. P. 26(a)(2)(B).  If the disclosure is later found to be

incomplete or incorrect, the providing party must supplement or correct the disclosure in a timely fashion. Fed. R. Civ. P. 26(e)(1)(A). For expert witnesses, the duty to supplement extends to both the report and information given during the expert's deposition. Fed. R. Civ. P. 26(e)(2). "Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Id.

"Supplementing an expert report under Rule 26 means 'correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" Duarte Nursery, Inc. v. United States Army Corps of Engineers, No. 2:13-CV-02095-KJM-DB, 2017 WL 3453206, at *6 (E.D. Cal. Aug. 11, 2017) (quoting Gerawan Farming, Inc. v. Rehrig Pacific Co., 2013 WL 1982797, at *5 (E.D. Cal. May 13, 2013)). Courts have rejected supplemental expert reports where the supplement (1) differed significantly from the original report, "effectively alter[ing] the expert's theories," or attempted to strengthen weaknesses in the expert's prior report. Id. (quoting Lindner v. Meadow Gold Dairies, Inc., 249 F.R.D. 625, 639 (D. Haw. 2008)). Courts similarly reject supplementations aimed at ameliorating "failures of omission" that resulted from an expert's inadequate or incomplete preparation. Id. (quoting Akeva L.L.C. v. Mizuno Corp., 212 F.R.D. 306, 310 (M.D.N.C. 2002)). "To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation." Id.

Should a party fail to provide information required by Rule

26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

   B.   <u>Admissibility of Expert Witness Testimony</u>

In a case arising under the Federal Tort Claims Act (FTCA), the Court applies the law of the state in which the alleged tort occurred. <u>Liebsack v. United States</u>, 731 F.3d 850, 855 (9th Cir. 2013). The burden of proof for a medical malpractice claim in California requires the plaintiff to offer competent expert testimony. <u>Flowers v. Torrance Mem'l Hosp. Med. Ctr.</u>, 884 P.2d 142, 147 (Cal. 1994).

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony in federal courts. In conjunction with the preliminary inquiry required by Federal Rule of Evidence 104, the Court must assess the expert witness's qualifications, the relevance of his or her testimony, and that testimony's reliability. <u>Daubert v. Merrell Dow Pharm., Inc.</u> ("<u>Daubert I</u>"), 509 U.S. 579, 594-95 (1993). The Court has wide discretion when acting as a gatekeeper for the admissibility of expert testimony. <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 151-52 (1999).

The Court considers an expert's "scientific, technical, or other specialized knowledge" in assessing whether the expert's qualifications "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "If an individual is not qualified to render an opinion on a particular question or subject, it follows that his opinion cannot assist the trier of fact with regard to that particular

question or subject." Morin v. United States, 534 F. Supp. 2d 1179, 1185 (D. Nev. 2005), aff'd, 244 F. App'x 142 (9th Cir. 2007). An expert's testimony is relevant if "it logically advances a material aspect of the proposing party's case." Daubert v. Merrell Dow Pharm., Inc. ("Daubert II"), 43 F.3d 1311, 1315 (9th Cir. 1995).

An expert's mere assurances of reliability are insufficient under Daubert. Daubert II, 43 F.3d at 1319. "Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." Id. at 1316.

### III. DISCUSSION

#### A. Stallings's Opinions Must Be Excluded

The United States seeks to strike the two expert reports submitted by Stallings, as well as exclude her testimony, because the latter report was untimely and Stallings utilized a flawed and unreliable methodology in her 2016 report. Supp. Brief, ECF No. 26, p. 1. For the reasons stated below, the Court grants the United States' motion.

##### 1. The December 2018 Supplement

Stallings's December 2018 report exceeds the bounds of supplementation provided for in Rule 26(e). "Supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." Keener v. United States, 181 F.R.D. 639, 640 (D. Mont. 1998). A party's

duty to supplement "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' original report." Reinsdorf v. Skechers U.S.A., 922 F. Supp. 2d 866, 880 (C.D. Cal. 2013) (internal citations, alterations, and quotation marks omitted).

The December 2018 update to Stallings's expert report consists of edits designed to bolster the inadequately prepared February 2016 report. The original report, nearly three years old at the time of disclosure, was riddled with errors and obsolete recommendations. Plaintiffs have provided no reason why the December 2018 report's updates, additions, and reassessments could not have been integrated into the original report, rather than submitted as an expert "supplement". By providing the necessary corrections after the rebuttal deadlines—including a new assessment of Mr. Hannah's living environment and potential home modifications, transportation needs, life expectancy, physician care, medications, specialist services, home health care, and surgical procedures—Stallings's February 2016 report functioned as a prop to evade effective rebuttal.

Stallings's December 2018 report is properly characterized as a new, rather than supplemental, expert report and should have been filed by the October 12, 2018 expert witness disclosure deadline. The December 2018 report is untimely and must be excluded unless found to be harmless or substantially justified under Rule 37(c).

The burden lies with Plaintiffs to prove that their untimely disclose was substantially justified or harmless. R & R Sails, Inc. v. Ins. Co. of Pennsylvania, 673 F.3d 1240, 1246 (9th Cir.

7

2012). Because Rule 37 functions as "a self-executing, automatic sanction to provide a strong inducement for disclosure of material," the Court need not make a finding of willfulness or bad faith when excluding evidence. Hoffman v. Constr. Protective Servs., Inc., 541 F.3d 1175, 1180 (9th Cir. 2008), as amended (Sept. 16, 2008). Here, Plaintiffs have not carried that burden.

Plaintiffs' submission of the December 2018 report on the final day of discovery, hours before Stallings's deposition, was not harmless. See Hoffman at 1180 (stating that "modifications to the court's and the parties' schedules," including additional briefing and re-opened discovery, may support a finding that a Rule 26 violation was not harmless). Having the United States base its rebuttal expert testimony on a knowingly outdated report provided Plaintiffs with a harmful litigation advantage.

Additionally, Stallings writes in the December 2018 report that she spoke with Mrs. Hannah on November 29, 2018, well after the expert witness disclosure deadline, "to obtain an update in regard[] to Lee Hannah's current status; living situation; home health care; medications; therapies; physicians care and current needs." Dec. 2018 Report, ECF No. 26-4, p. 9. Plaintiffs have not provided any explanation that substantially justifies why the November 29, 2018 update could not have taken place prior to the October 12, 2018 disclosure deadline when it was clear that the February 2016 report and assumptions therein were stale.

As Plaintiffs' untimely disclosure was neither substantially justified nor harmless, Rule 37(c)(1)'s automatic exclusion applies.

///

2. Stallings's Testimony Is Not Reliable

As the Court must exclude Stallings's December 2018 report, the Court next addresses the United States' argument that Stallings's testimony is unreliable under Federal Rule of Evidence 702. See Supp. Brief at 6.

Even assuming that Stallings is qualified and her testimony is relevant, review of the February 2016 report and evaluation of Stallings's deposition testimony illustrates that she failed to apply reliable principles and methods to the facts of the case. See Fed. R. Evid. 702(a) (stating that a witness may be qualified as an expert by "scientific, technical, or other specialized knowledge"); Daubert II, 43 F.3d at 1315 (stating that testimony is relevant where it logically advances a material aspect" of the plaintiff's case); id. at 1316 (stating that testimony must be soundly based on objective, independent methodology).

The Court acknowledges that concerns about reliability are lessened in cases like this, where the judge sits as the trier of fact. CFM Commc'ns, LLC v. Mitts Telecasting Co., 424 F. Supp. 2d 1229, 1233 (E.D. Cal. 2005). Nevertheless, a bench trial does not exempt an expert witness from Rule 702's reliability requirement.

Stallings testified at her deposition that her methodology for determining the reasonable value of future medical services was as follows: she called billing representatives for three providers, obtained the full-billed amount for a treatment or service, and then decided that the middle of the three was the reasonable value. Stallings Dep. at 59-70. She did not retain records listing the high or low values, or the sources she

contacted to obtain these values. See id. For medical equipment and supplies, Stallings utilized a similar method. She collected full-billed amounts from websites and averaged the prices, failing to retain records or original prices from which she derived her average. See id. at 75. By failing to retain the records upon which she based her calculations, there is no way to perform an objective, independent validation of the Stallings's methodology. See Daubert II, 43 F.3d at 1319.

Plaintiffs have not produced evidence about whether Stallings's methodologies have been tested or whether they have been accepted by others in the field. See Daubert, 509 U.S. at 593-94. It is apparent that Stallings's reliance on the full-billed amounts of future medical services and equipment is not in accordance with the California Supreme Court's endorsement of the "market or exchange value as the proper way to think about the reasonable value of medical services." Markow v. Rosner, 208 Cal. Rptr. 3d 363, 381 (Ct. App. 2016) (noting that "[f]or insured plaintiffs, the reasonable market or exchange value of medical services will not be the amount billed by a medical provider or hospital, but the 'amount paid pursuant to the reduced rate negotiated by the plaintiff's insurance company'"). An individual enrolled in Medicare, like Mr. Hannah, does not pay the full-billed amount. See Bermudez v. Ciolek, 1329, 188 Cal. Rptr. 3d 820, 834 (Ct. App. 2015), as modified on denial of reh'g (July 20, 2015) ("Insured plaintiffs incur only the fee amount negotiated by their insurer, not the initial billed amount. Insured plaintiffs may not recover more than their actual loss, i.e., the amount incurred and paid to settle their medical

bills.").

Stallings's calculations based on full-billed amounts are not the only problems within her report. Stallings based her calculations in the 2016 report on an assumption that Mr. Hannah would live to be 83 years old, relying on a Governmental Life Expectancy Table on the CDC's website. 2016 Stallings Report, ECF No. 15-2, pp. 9-10. She admits that she has no formal education or training in determining life expectancy and that her assumption did not factor in Mr. Hannah's history of atrial fibrillation, cardiomyopathy, and alcoholism. Stallings Dep. at 39. Stallings's assumption about Mr. Hannah's life expectancy illustrates a profound disconnect between the facts and her conclusions. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

As this was the first life care plan that Stallings prepared for an individual with quadriplegia, the Court lacks evidence that her methodologies predated this case and have been previously accepted. In lieu of support for Stallings's methodology, Plaintiffs attempt to shift the burden on to the United States to provide authority disproving the reliability of Stallings's methods and argue that Medicare is insolvent. Supp. Opp'n at 7-8. Such arguments are not persuasive.

Assumption and conjecture cannot form the basis of an objective, and independent methodology. Although Stallings may be a very qualified nurse, the Court cannot rely on Plaintiffs' mere assurances that her methods are sound. See Daubert II, 43 F.3d at 1319 ("We've been presented with only the experts'

qualifications, their conclusions and their assurances of reliability. Under Daubert, that's not enough."). Based on a thorough review of the record and Stallings's report, the Court finds that Stallings's testimony does not utilize a sufficiently reliable methodology to satisfy the reliability requirement.

IV. ORDER

The Court hereby GRANTS the United States' Motion to Strike April Stallings's expert testimony and STRIKES her February 2016 report and December 2018 supplement.

IT IS SO ORDERED.

Dated: February 19, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE